Filed 7/21/26

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ENRIQUE NUÑEZ LOPEZ,<br><br>    Defendant and Appellant. | H052469<br>(Monterey County<br>Super. Ct. No. SS121859B) |

In 2014, a jury found Enrique Nuñez Lopez guilty of various crimes, including second degree murder, stemming from a fight he took part in involving several Sureño gang members. The trial court sentenced Lopez to 22 years to life in prison.

In 2019, Lopez filed a petition requesting that his conviction for second degree murder be vacated and he be resentenced pursuant to former Penal Code[1] section 1170.95 (Stats. 2018, ch. 1015, § 4), on the grounds that he had been convicted under a natural and probable consequences theory that was no longer valid.[2] The trial court issued an order to show cause on Lopez's petition, but denied the petition after an evidentiary hearing. A different panel of this court affirmed the denial on appeal, finding that the trial court correctly determined the prosecution had met its burden to prove beyond a

---

[1] Undesignated statutory references are to the Penal Code.

[2] After Lopez filed his petition, section 1170.95 was amended and renumbered as section 1172.6. (Stats. 2022, ch. 58, § 10, eff. June 30, 2022; see also Stats. 2021, ch. 551, § 2, eff. Jan. 1, 2022.) For ease of reference, we will refer to this statute by its current designation, section 1172.6.

reasonable doubt Lopez was guilty of second degree murder under current law. (*People v. Lopez* (Mar. 18, 2022, H047254) [nonpub. op.].[3])

In 2023, Lopez filed a renewed petition for resentencing under section 1172.6, arguing that new legal authority, namely, *People v. Reyes* (2023) 14 Cal.5th 981 (*Reyes*) and *People v. Pittman* (2023) 96 Cal.App.5th 400 (*Pittman*), required reconsideration of his resentencing petition. While the trial court did not find reconsideration required under *Reyes,* it found a prima facie showing had been made for reconsideration under *Pittman* and issued an order to show cause. Following an evidentiary hearing, the trial court denied Lopez's petition, but accepted Lopez's invitation to resentence him pursuant to section 1172.1. Based on the parties' stipulation to a reduced sentence, the trial court resentenced Lopez to a total term of 17 years to life in prison.

On appeal, Lopez contends that the trial court erred in finding that the holding in *Reyes* did not require reconsideration of his petition. He further argues that the trial court erred in not retroactively applying Assembly Bill No. 333 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 699) (Assembly Bill 333), which modified the elements required to prove active participation in a criminal street gang under section 186.22, subdivision (a). Alternatively, Lopez argues that he received ineffective assistance of counsel based on counsel's alleged failure to assert that Assembly Bill 333 should apply to the resentencing proceedings.

For the reasons discussed below, we reverse the trial court's order denying Lopez's successive section 1172.6 petition and will remand for the trial court to conduct a new evidentiary hearing to determine whether the People can prove beyond a reasonable doubt Lopez is guilty of second degree murder under current law. We also

---

[3] On our own motion, we take judicial notice of our opinion in this appeal, as well as our opinion in Lopez's first appeal in the same underlying trial court case*, People v. Lopez* (May 31, 2018*,* H0422270) [nonpub. op.]. (Evid. Code, § 452, subd. (d)(1).)

2

find that Lopez's remaining claims related to the trial court's resentencing order pursuant to section 1172.1 are not properly before us.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Procedural History

#### 1. Original Charges, Verdict, and First Appeal

On August 18, 2014, the Monterey County District Attorney's Office filed an amended information charging Lopez and a co-defendant, Juan Salazar Jr., with the murders of Hector Reyes and Daniel Fraga (§ 187, subd. (a); counts 1 and 2); battery with serious bodily injury (§ 243, subd. (d); count 3); assault with force likely to produce great bodily injury (§ 245, subd. (a)(4); count 4); and child abuse (§ 273a, subd. (a); count 5), all relating to a 17-year-old member of their gang; and street terrorism (§ 186.22, subd. (a); count 6). The information also alleged that Salazar and Lopez committed counts 1 through 5 for the benefit of, at the direction of, or in association with a criminal street gang, with the specific intent to promote, further, or assist in criminal conduct by said gang members, within the meaning of section 186.22, subdivisions (b)(1)(A) and (b)(1)(C). The information further alleged that Salazar personally used a firearm in the commission of both murders (§ 12022.5, subd. (a)).

A jury trial took place between August and September 2014. On September 17, 2014, the jury found Salazar guilty on all charges and enhancements. As for Lopez, the jury was unable to reach a verdict on count 1 as to the murder of Reyes, and the court declared a mistrial on this count. The jury found Lopez guilty of the remaining charges, including the second degree murder of Fraga (count 2), and the associated gang enhancements in counts 2 through 5.

On April 10, 2015, the trial court sentenced Lopez to an aggregate term of 22 years to life in prison as follows: (1) 15 years to life in prison for second degree murder (count 2); (2) a consecutive middle term of four years in prison for child abuse (count 5), plus three years for the associated gang enhancement under section 186.22, subdivision

3

(b)(1)(A); (3) a concurrent upper term of four years in prison for battery with serious bodily injury (count 3), plus three years for the associated gang enhancement under section 186.22, subdivision (b)(1)(A), which was stayed pursuant to section 654; (4) a concurrent upper term of four years in prison for assault with force likely to produce great bodily injury (count 4), plus three years for the associated gang enhancement under section 186.22, subdivision (b)(1)(A), which was stayed pursuant to section 654; and (5) a concurrent upper term of three years in prison for street terrorism (count 6). The court also struck the gang enhancement attached to count 2. Lopez appealed, and a different panel of this court affirmed his conviction in full. (*People v. Lopez*, *supra*, H042227.)

### 2. First Section 1172.6 Resentencing Petition and Appeal

Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) took effect on January 1, 2019, imposing a number of "statutory changes to more equitably sentence offenders in accordance with their involvement in homicides." (Stats. 2018, ch. 1015, § 1, subd. (b).) Senate Bill 1437 added what is now designated as section 1172.6, which allowed a person convicted in a case involving felony murder or murder under the natural and probable consequences doctrine to file a petition with the sentencing court to vacate the conviction and to be resentenced.

On February 5, 2019, Lopez filed a petition for resentencing pursuant to Senate Bill 1437. The trial court found that Lopez had demonstrated a prima facie case for relief, issued an order to show cause, and held a hearing, where the parties presented argument as to whether Lopez was guilty beyond a reasonable doubt of second degree murder under current law. On September 5, 2019, the trial court denied Lopez's petition, finding that the People had met their burden of proof, based on the evidence presented at trial, Lopez was guilty of implied malice murder under current law.

On appeal, a different panel of this court affirmed the trial court's denial of Lopez's petition. (*People v. Lopez. supra*, H047254.) In an unpublished opinion, this court determined that there was substantial evidence demonstrating that: (1) Lopez's

actions were the proximate cause of Fraga's death; and (2) Lopez acted with implied malice, namely, he knew that his conduct endangered the life of another and acted with conscious disregard for life. (*People v. Lopez, supra,* H047254.)

### 3. Second Section 1172.6 Resentencing Petition

On December 4, 2023, Lopez filed a second resentencing petition pursuant to section 1172.6. Lopez argued that pursuant to *People v. Farfan* (2021) 71 Cal.App.5th 942 (*Farfan*), a successive section 1172.6 petition was permitted if it was based on new legal authority. Lopez accordingly claimed that the following new authority should apply to his case: (1) *Reyes, supra,* 14 Cal.5th 981, which redefined the meaning of implied malice in the context of second degree murder; (2) *Pittman, supra,* 96 Cal.App.5th 400, which required that the trial court consider a defendant's youthfulness at the time of the offense in determining whether he harbored the appropriate mental state for implied malice; and (3) Senate Bill No. 775 (2021–2022 Reg. Sess.) (Senate Bill 775), which required that the prosecution prove guilt beyond a reasonable doubt in a section 1172.6 resentencing proceeding.

On May 23, 2024, the trial court held a hearing on Lopez's petition. At the hearing, the court concluded that a prima facie showing had not been made for resentencing under *Reyes* because the People had previously proven the requisite actus reus and mens rea for implied malice murder beyond a reasonable doubt, "even under the changes in the law." However, the trial court found that a prima facie showing had been made pursuant to *Pittman*, because Lopez was 23 years old at the time of the offense, issued an order to show cause, and set an evidentiary hearing for July 18, 2024.

Prior to the evidentiary hearing, Lopez filed an invitation for the court to recall his sentence under section 1172.1[4], based on recent changes to applicable sentencing law,

---

[4] Under section 1172.1, a trial court may recall and resentence a defendant "on its own motion" within 120 days of the date of commitment. (§ 1172.1, subd. (a)(1).) In addition, pursuant to an amendment effective January 1, 2024, a trial court now also has

including but not limited to the sentencing procedures under section 1170, and the changes to the definitions of "criminal street gang" and "pattern of criminal gang activity" under Assembly Bill 333. The People opposed, arguing that Lopez's sentence had not been altered by new statutory authority or case law, and the interests of justice would not be served by resentencing him.

At the July 18, 2024 evidentiary hearing, Lopez testified on his own behalf, and presented testimony from three witnesses: (1) forensic psychologist Dr. Carolyn Murphy, who testified as an expert witness on adolescent brain development; (2) Lopez's sister, Michelle Lopez; and (3) Lopez's cousin, Jose Jimenez. At a subsequent hearing on August 14, 2024, the trial court heard argument from the parties, and denied Lopez's petition on the basis that the "youthful factors due to brain development at the time of the age of 23 simply seem to be lacking here." However, the court indicated that it was inclined to accept Lopez's invitation to resentence him on the counts with determinate terms under section 1172.1, based on changes in sentencing law limiting the court's ability to impose upper term sentences. With the parties' agreement, the court accepted the invitation for resentencing and resentenced Lopez as follows: (1) a consecutive lower term of two years in prison for child abuse (count 5); (2) a concurrent lower term of two years in prison for battery with serious bodily injury (count 3); (3) a concurrent lower term of four years in prison for assault with force likely to produce great bodily injury (count 4); and (4) a concurrent lower term of two years in prison for street terrorism (count 6). The trial court also struck the three-year gang enhancement as to count 5. Finally, the trial court indicated it would not resentence Lopez on the second degree

---

jurisdiction to recall a sentence and resentence a defendant on its own motion "at any time if the applicable sentencing laws at the time of original sentencing are subsequently changed by new statutory authority or case law." (§ 1172.1, subd. (a)(1); Assem. Bill No. 600 (2023–2024 Reg. Sess.) (Assembly Bill 600).)

murder conviction in count 2 as it concluded that doing so would not be in the interests of justice.  Accordingly, Lopez's total sentence was reduced to 17 years to life in prison.

Lopez timely appealed.

## B.  *Factual Background[5]*

The following factual summary is taken from this court's prior opinion in *People v. Lopez, supra,* H047254:

"In 2012, Lopez, then a member of the Sureño gang La Esperanza Trece (Espe), accused fellow gang member Daniel 'Frosty' Fraga of being 'no good' at a gang meeting. The meeting was attended by about 10 Espe members, including [Salazar].  According to a number of Espe members, at Lopez's urging, the gang held a vote to determine whether Frosty was no good, meaning he could be killed by members of Espe.  There was some disagreement among the Espe witnesses as to the outcome of the vote.  Three testified that the group decided Frosty was no good.  Two testified that the majority agreed Frosty was no good but that no final decision was made, either because they were awaiting proof or because only gang members in county jail can decide whether a person is no good. And two testified there was no vote; however, one of those witnesses (Lopez's brother) admitted having told police that the group had decided to kick Frosty out of the gang because he was no good.  A gang expert testified that every Sureño and every member of the Mexican Mafia has an obligation to kill former Sureños who they know have been deemed no good.  [¶]

"Later on the day of the no-good vote, Frosty—accompanied by his friend Hector 'Osito' Reyes—confronted Lopez at the home of Salazar's girlfriend.  Lopez, Salazar, and the other Espe members who had participated in the no-good vote were hanging out there.  A fight broke out.  It began when Frosty punched Lopez.  Lopez's brother, known

---

[5] We draw the relevant factual information from our prior opinion in *People v. Lopez, supra,* H047254.

7

as Dodger, came to Lopez's defense. When a gang member known as Shadow tried to break up the fight, Osito hit him in the head with the butt of a gun. Osito also hit Dodger in the head with the gun several times, inflicting an injury that required surgical staples. Lopez was stabbed in the arm during the fight. He and Dodger fled the house. Shadow ended up in the bathroom with Osito, who was still armed with a gun, and Frosty, who had a pair of scissors. Shadow was able to escape the bathroom unharmed and fell to the floor in the hall outside the bathroom. Salazar fatally shot Frosty and Osito from the hallway outside the bathroom, a distance of about nine feet from where their bodies were found. Frosty suffered three gunshot wounds; Osito suffered six or seven gunshot wounds. Some of each victim's gunshot wounds had a downward trajectory, which the forensic pathologist who performed the autopsies opined demonstrated that the victims were bending over or on the floor when they sustained those wounds."

## II.    DISCUSSION

### A.    *Reconsideration of Section 1172.6 Petition Based on* **Reyes**

Lopez argues that the trial court erred in finding that he had not demonstrated a prima facie case for a successive petition based on the new authority set forth in *Reyes, supra,* 14 Cal.5th 981. Lopez claims that *Reyes* modified the requirements for both the actus reus and mens rea of implied malice murder, and therefore was controlling on Lopez's successive petition such that reconsideration was required. Lopez further argues that based on *Reyes*, there was insufficient evidence to demonstrate that he had the required mental state, or that his actions proximately caused Frosty's death.

#### 1.  *Relevant Procedural Background*

##### a.  *Ruling on First Resentencing Petition and Findings on Appeal*

At the September 5, 2019 hearing on Lopez's first section 1172.6 petition, the trial court first clarified, and the prosecution agreed, that the issue presented was whether the prosecution had proven beyond a reasonable doubt that Lopez was guilty under a valid theory of implied malice murder where "both elements [of implied malice murder] were

8

met, both the physical act and the subjective mens rea" with the physical act being Lopez "calling of the no-good meeting and the subjective knowledge of what that meant, basically." The court then noted that the definition of "implied malice" required that " 'the defendant act with a wanton disregard for the high probability of death, thereby requiring a subjective awareness of a high degree of risk. It's not enough that a reasonable person would have been aware of the risk to support a finding of the implied malice; it has to be a subjective awareness.' " The court noted that this specific definition was "significant here where your average person wouldn't necessarily know calling a meeting with associates and saying, Hey, I think, you know, so and so is no good. A normal person might not know the consequence that would have. But certainly someone in Mr. Lopez's position would know what that meant. And several witnesses testified at trial that that meant an individual was basically marked for death. Some said beating and possibly death, and others just said yes, that person could then be killed by other gang members." The court therefore found that, based on the evidence presented at trial, the prosecution had proven beyond a reasonable doubt both the physical and mental components required for implied malice murder.

In affirming the trial court's finding on appeal, a different panel of this court concluded that there was substantial evidence that: (1) Lopez's actions proximately caused Frosty's death; and (2) Lopez knew his conduct endangered the life of another, and he acted with conscious disregard for life. (*People v. Lopez, supra,* H047254.) With respect to causation, this court found that the intervening causes—namely, the fight that broke out between Frosty and Lopez on the day of the no-good vote and Salazar shooting Frosty—were both dependent on Lopez's initial acts surrounding the no-good vote against Frosty. (*People v. Lopez, supra,* H047254.) This court specifically noted that three gang members and the gang expert testified that a gang member who is accused of being no good would be expected to confront his or her accuser, thus making it reasonable for the trial court to infer that "Frosty's attack was a normal and reasonably

9

foreseeable result of Lopez's acts of accusing Frosty of being no good and urging the gang to deem him no good." (*People v. Lopez, supra,* H047254.) In addition, based on testimony from several witnesses that a gang member who has been deemed no good could be killed by his fellow gang members, the trial court "reasonably could have concluded based on the foregoing testimony that Lopez ' " 'should have foreseen the possibility' " ' of Frosty being killed by a member of Espe as the result of his actions surrounding the no-good vote. [Citation.]" (*People v. Lopez, supra,* H047254.)

Regarding the required mental state for implied malice murder, this court found that there was substantial evidence to support this element based on the evidence presented at trial that "Lopez encouraged his fellow gang members to deem Frosty no good and, at Lopez's urging, a vote to do just that was held. The gang expert and nearly every Espe witness testified that a gang member who has been deemed no good is subject to being killed by his former fellow gang members. According to the gang expert, Sureño gang members are *obligated* to kill someone who has been deemed no good. This evidence amply supports the reasonable inferences that Lopez knew that calling for Frosty to be declared no good endangered Frosty's life and that Lopez nevertheless did so with conscious disregard for Frosty's life." (*People v. Lopez, supra,* H047254.) In addition, this court was not persuaded by Lopez's argument that the witnesses were unaware of any Espe gang member ever having been killed as a result of being deemed no good, particularly because: (1) no witnesses were asked whether they even knew of an Espe gang member being deemed no good; and (2) the gang expert stated he had not researched previous murders associated with the Espe gang resulting from a no good vote. (*People v. Lopez, supra,* H047254.) This court concluded that such testimony could be reasonably interpreted as demonstrating that no good votes were rare, but had no bearing on whether Lopez had the required mens rea for implied malice murder. (*People v. Lopez, supra,* H047254.)

10

Lopez subsequently filed a petition for review with the California Supreme Court, which was granted on June 22, 2022, S274160, pending the court's decision on *Reyes, supra,* 14 Cal.5th 981 but was subsequently dismissed on October 18, 2023, after the decision on *Reyes* was issued.

### b. *Ruling on Second Resentencing Petition*

As discussed above, after Lopez filed his successive section 1172.6 petition in December 2023, the trial court held an initial hearing on May 23, 2024. At the hearing, the court concluded that a prima facie showing had not been made for resentencing under *Reyes* because the People had previously proven the requisite actus reus and mens rea for implied malice murder beyond a reasonable doubt, "even under the changes to the law." However, the trial court did find that a prima facie showing had been made pursuant to *Pittman*, because Lopez was 23 years old at the time of the offense and issued an order to show cause "as to why the Petitioner's sentence should not be recalled and him being resentenced." At the subsequent hearing on August 14, 2024, the trial court reiterated that it had previously found "the evidence proved beyond a reasonable doubt that Mr. Lopez was guilty of implied malice murder, which was affirmed by the Court of Appeal" and was not reassessing this issue; instead, the court was solely addressing the impact, if any, of Lopez's youth on his mental state at the time of the offense.

### 2. *Applicable Law and Standard of Review*

Effective January 1, 2019, Senate Bill 1437 "amend[ed] the felony murder rule and the natural and probable consequences doctrine … to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) To that end, the bill amended section 188, subdivision (a)(3), which now requires that all principals must act with express or implied malice to be convicted of the crime of murder, with the exception of felony murder under section 189, subdivision (e). (Stats. 2018, ch. 1015, § 2.)

11

In addition to the amendments to sections 188 and 189 described above, Senate Bill 1437 added what is now section 1172.6. (Stats. 2018, ch. 1015, § 4; Stats. 2022, ch. 58, § 10.) As relevant here, section 1172.6 allows a person convicted of murder under prior law to petition the court to vacate their conviction and be resentenced on any remaining counts. (§ 1172.6, subd. (a).) All of the following conditions must apply to warrant section 1172.6 relief: "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine[,] or other theory under which malice is imputed to a person based solely on that person's participation in a crime. … [¶] (2) The petitioner was convicted of murder … following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder. … [¶] (3) The petitioner could not presently be convicted of murder … because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a).)

Upon "a prima facie showing of entitlement to relief under [section 1172.6], the petitioner is entitled to receive 'a hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not been previously … sentenced.' " (*People v. Sanchez* (2020) 48 Cal.App.5th 914, 917.) At this hearing, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended … If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (§ 1172.6, subd. (d)(3).) The trial court may rely on "evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion." (*Ibid.*)

"Ordinarily, a trial court's denial of a section 1172.6 petition is reviewed for substantial evidence." (*Reyes, supra,* 14 Cal.5th at p. 988.) Thus, we examine the entire "record ' " 'in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " ' " (*Ibid*.) We review the "application of [that evidence] to the statute de novo." (*People v. Silva* (2023) 87 Cal.App.5th 632, 639.) That the circumstances might also reasonably be reconciled with a contrary finding does not warrant reversal of the judgment. (*People v. Thomas* (2017) 15 Cal.App.5th 1063, 1071 [defendant on substantial evidence review "bears an 'enormous burden' "].) However, "where there is an issue as to whether the trial court misunderstood the elements of the applicable offense, the case presents a question of law which we review independently." (*Reyes, supra,* 14 Cal.5th at p. 988.) In addition, "[w]e independently review the denial of a resentencing petition at the prima facie stage, whether the denial is based on the issue preclusion doctrine [citation], the law of the case doctrine, or, more generally, failure by the petitioner to make a prima facie showing under section 1172.6." (*People v. Beaudreaux* (2024) 100 Cal.App.5th 1227, 1238–1239; accord, *People v. Bodely* (2023) 95 Cal.App.5th 1193, 1200.)

In the instant matter, because Lopez argues that the court erred in finding he had not made a prima facie claim for a successive petition, which would include consideration of *Reyes*, we shall examine de novo.

### 3. *Theories for Liability for Second Degree Murder*

"Second degree murder is 'the unlawful killing of a human being with malice aforethought but without the additional elements, such as willfulness, premeditation, and deliberation, that would support a conviction of first degree murder.' [Citation.] Malice may be either express, i.e., when a defendant manifests an intention to kill, or implied. [Citation.] ' "Malice is implied when the killing is proximately caused by ' "an act, the

13

natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life." ' " ' [Citation.] Thus, implied malice includes an objective component—an act that is dangerous to life—and a subjective component—the defendant's awareness of and disregard for the danger. [Citation.]" (*People v. Clements* (2022) 75 Cal.App.5th 276, 299.)

A person can be convicted of aiding and abetting second degree murder based on implied malice. (*Reyes*, *supra*, 14 Cal.5th at p. 990; *People v. Gentile* (2020) 10 Cal.5th 830, 850 [" '[N]otwithstanding Senate Bill 1437's elimination of natural and probable consequences liability for second degree murder, an aider and abettor who does not expressly intend to aid a killing can still be convicted of second degree murder if the person knows that his or her conduct endangers the life of another and acts with conscious disregard for life.' "].)

" 'In the context of implied malice, the actus reus required of the perpetrator is the commission of a life-endangering act. For the direct aider and abettor, the actus reus includes whatever acts constitute aiding the commission of the life-endangering act. Thus, to be liable for an implied malice murder, the direct aider and abettor must, by words or conduct, aid the commission of the life-endangering act, not the result of that act. The mens rea, which must be personally harbored by the direct aider and abettor, is knowledge that the perpetrator intended to commit the act, intent to aid the perpetrator in the commission of the act, knowledge that the act is dangerous to human life, and acting in conscious disregard for human life.' " (*Reyes, supra,* 14 Cal.5th at p. 991.)

4. ***Upon Concluding a Prima Facing Showing Was Made By Lopez, The Trial Court Was Required to Hold a New Hearing Consistent with Section 1172.6, subdivision (d)(3)***

Lopez argues that pursuant to *Farfan, supra,* 71 Cal.App.5th at page 951, a successive petition for resentencing under section 1172.6 is permitted if the petition

asserts "grounds for claiming eligibility for relief under the statute that were not previously available under other judicial interpretations." Lopez therefore claims that because *Reyes* was decided after the decision in his first petition and the resulting appeal, and the decision contained "clarifying language" on proximate causation and the definition of implied malice, he met the requirements for a successive petition under *Farfan*, and the trial court erred in not reconsidering his petition on this basis. In opposition, the Attorney General argues that because *Reyes* did not alter or change the meaning of implied malice, it did not constitute an intervening change in the law justifying a successive petition for resentencing.

While section 1172.6 does not expressly prohibit individuals from filing more than one petition for resentencing, a subsequent petition may be barred by the doctrine of issue preclusion. (*Farfan, supra,* 71 Cal.App.5th at p. 950.) " 'As traditionally understood and applied, issue preclusion bars relitigation of issues earlier decided "only if several threshold requirements are fulfilled." ' " (*People v. Curiel* (2023) 15 Cal.5th 433, 451.) The issue sought to be precluded from relitigation must be identical to that decided in a former proceeding, the issue must have been actually litigated and necessarily decided in the former proceeding, the decision in the former proceedings must be final and on the merits, and the party against whom preclusion is sought must be the same or in privity with the party in the former proceeding. (*Id.* at pp. 451–452.) Even if all of these requirements are met, there are still exceptions. One such exception " 'holds that preclusion does not apply when there has been a significant change in the law since the factual findings were rendered that warrants reexamination of the issue.' " (*Id.* at p. 454.) This exception only applies to a significant change in the law impacting the determination of a relevant issue. (*People v. Strong* (2022) 13 Cal.5th 698, 717–718; see also *Farfan, supra,* 71 Cal.App.5th at pp. 950–951.) We are not aware of any authority which has applied issue preclusion to bar legal theories or factual conclusions, under the

15

circumstances here, where the trial court has *again* found a prima facie showing by the petitioner and ordered a *new* hearing under section 1172.6, subdivision (d)(3).

In *Reyes,* the California Supreme Court addressed the sufficiency of evidence for the trial court's denial of a petition for resentencing under section 1172.6. (*Reyes, supra,* 14 Cal.5th at p. 984.) As noted above, in making its ruling, the court indicated that " 'to be liable for an implied malice murder, the direct aider and abettor must, by words or conduct, aid the commission of the life-endangering act, not the result of that act. The mens rea, which must be personally harbored by the direct aider and abettor, is knowledge that the perpetrator intended to commit the act, intent to aid the perpetrator in the commission of the act, knowledge that the act is dangerous to human life, and acting in conscious disregard for human life.' " (*Reyes, supra,* 14 Cal.5th at p. 991.) In addition, the court provided clarification on the meaning of the term "dangerous to human life" in the context of implied malice murder, noting that "to suffice for implied malice murder, the defendant's act must not merely be dangerous to life in some vague or speculative sense; it must ' "involve[] a high degree of probability that it will result in death." ' " (*Id.* at p. 989.) In setting forth the elements of aider and abettor liability for implied malice murder, the *Reyes* court quoted these elements directly from a prior appellate opinion in *People v. Powell* (2021) 63 Cal.App.5th 689. (*Reyes, supra,* 14 Cal.5th at p. 991.) Moreover, the *Reyes* court itself noted that its clarifying language regarding the term "dangerous to human life" was not a new or intervening change to the law, but simply reiterated the court's conclusion in prior cases, specifically in *People v. Knoller* (2007) 41 Cal.4th 139 (*Knoller*), that "under the objective component of implied malice, ' " 'dangerous to life' " ' means the same thing as a ' "high degree of probability that" ' the act in question ' "will result in death." ' " (*Reyes, supra*, 14 Cal.5th at p. 989, citing *Knoller, supra*, 41 Cal.4th at p. 152.)

With this in mind, we requested supplemental briefing from the parties on the following question: "The trial court issued an order to show cause and held a hearing on

16

the applicability of *People v. Pittman* (2023) 96 Cal.App.5th 400 to determine whether appellant had the required implied malice to be found guilty of second degree murder. Given that circumstance, must the trial court still consider the legal standard for implied malice set forth in *People v. Reyes (*2023) 14 Cal.5th 981, and any related evidence, at a new hearing under Penal Code section 1172.6, subdivision (d)(3)?"

Lopez argues that because section 1172.6 requires that the trial court admit new evidence and apply current law at an evidentiary hearing, the trial court erred as a matter of law by refusing to reconsider the evidence under the clarified standards set forth in *Reyes*. Lopez claims that because he testified, for the first time, at the evidentiary hearing that he did not know his actions carried a high probability of death, the trial court was therefore required to consider this new evidence in determining whether he acted with implied malice, as clarified by *Reyes*. In response, the Attorney General argues that *Pittman* accounted for and cited *Reyes* when discussing the required mental state for implied malice murder. Therefore, because the trial court considered the applicability of *Pittman* in determining whether Lopez demonstrated the required mental state to be guilty of second degree murder, the Attorney General contends that the trial court should not have been required to hold a new section 1172.6 hearing to consider the applicability of *Reyes* as well.

In *Pittman*, the appellate court concluded that given the similarities between the implied malice mental state of "conscious disregard for human life", as articulated in *Reyes,* and the "reckless indifference to human life" standard applicable to felony murder, it was appropriate for a trial court to consider whether the defendant's youth impacted his ability to form the mental state required for implied malice murder. (*Pittman, supra,* 96 Cal.App.5th at pp. 417–418.) In the instant case, when the trial court issued the order to show cause and set the matter for an evidentiary hearing on Lopez's successive petition under *Pittman*, the trial court noted that it was only doing so for the limited purpose of evaluating whether Lopez's youthfulness affected his ability to form the requisite mental

17

state for implied malice murder. However, we find nothing in section 1172.6, the *Pittman* decision itself, or in any authority that also permitted a successive petition based on the youthfulness factors identified in *Pittman* (see, e.g., *People v. Jimenez* (2024) 103 Cal.App.5th 994, 1006–1007) that supports a trial court limiting its inquiry in such a manner when conducting a *new* section 1172.6 hearing. Indeed, section 1172.6, subdivision (d)(3) expressly states that once a trial court issues an order to show cause on a resentencing petition and sets the matter for an evidentiary hearing, the prosecution must "prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." In other words, the statutory language does not limit the evidentiary hearing to mental state only, but requires a determination of whether there is proof beyond a reasonable doubt of the entire offense. While we recognize that the "the purpose of proceedings under section [1172.6] is to decide 'issues not previously determined, not to [retry] … disputes that have already been resolved' [Citation.]" (*People v. Flint* (2022) 75 Cal.App.5th 607, 615), we cannot conclude that such a precept allows a trial court to limit its inquiry after issuing an order to show cause to a single consideration, in this case youthfulness, as related to an underlying murder charge.

Accordingly, we find that once the trial court issued an order to show cause and set a new evidentiary hearing regarding the effect, if any, of Lopez's youthfulness on his mental state, it was necessarily required to conduct a complete hearing, including allowing parties to "offer new or additional evidence to meet their respective burdens" and consider the entirety of admissible evidence to determine whether the People had proven Lopez's guilt beyond a reasonable doubt under current law. (§ 1172.6, subd. (d)(3).) We therefore conclude that the trial court's decision to limit a new section 1172.6, subdivision (d)(3) hearing pursuant to *Pittman* was in error.

### 5. *The Error Requires Reversal*

In supplemental briefing, the parties addressed the appropriate standard of review to assess prejudice if this court concluded the trial court erred. Citing *People v. Gallardo* (2024) 105 Cal.App.5th 296, 301–303, Lopez claims an appellate court may reverse and remand without assessing prejudice. Although the Attorney General acknowledges the holding in *Gallardo*, he argues that prejudice should be assessed under the *Watson*[6] standard and our court should determine whether a reasonable probability exists that Lopez could have achieved a more favorable result in the absence of the error.

Under these circumstances, we need not decide which standard of prejudice applies. Because Lopez was not afforded an opportunity to fully make arguments and present new evidence under current law within the context of a *new* section 1172.6, subdivision (d)(3) hearing, the process was fundamentally inconsistent with the statutory mandates. In light of the limited scope of the second section 1172.6 evidentiary hearing to the youthfulness factors identified in *Pittman*, we conclude the appropriate remedy is to remand for a new evidentiary hearing. (See, e.g., *People v. Dixon* (2026) 118 Cal.App.5th 116, 137 & fn. 3 [where trial court erroneously admitted hearsay evidence in a section 1172.6, subdivision (d)(3) hearing, remand for a new evidentiary hearing was the appropriate remedy].) On remand, the trial court is directed to issue an order to show cause and hold a new evidentiary hearing, consistent with the requirements of section 1172.6, subdivision (d)(3) and current law, which includes but is not limited to, the guidance provided in *Reyes*.

### B. *Section 1172.1 and Retroactive Application of AB 333 to Resentencing Proceedings*

Lopez next argues that the trial court erred in not retroactively applying the requirements of Assembly Bill 333 to his convictions after accepting his invitation to

---

[6] *People v. Watson* (1956) 46 Cal.2d 818, 836.

19

resentence him pursuant to section 1172.1 on the non-murder charges. He specifically argues that once the trial court decided to resentence him, this rendered his judgment nonfinal, and he was therefore entitled to "retroactive application of new ameliorative laws rendering his gang charges and enhancement invalid." He further claims that because his murder conviction was premised on his participation in street terrorism, which was redefined under Assembly Bill 333, his murder conviction should be reversed. For the reasons explained below, we find that these claims are not properly before us and therefore do not reach the merits.

### 1. Applicable Law and Standard of Review

#### a. Resentencing Under Section 1172.1

Under section 1172.1, a trial court may recall a sentence and resentence a defendant "at any time" upon the recommendation of various designated correctional or law enforcement authorities, including the Secretary or the Board of Parole Hearings, the county correctional administrator, the district attorney of the county in which the defendant was sentenced, or the Attorney General. (§ 1172.1, subd. (a)(1).) The trial court may also recall and resentence a defendant "on its own motion" within 120 days of the date of commitment. (§ 1172.1, subd. (a)(1).) In addition, pursuant to an amendment effective January 1, 2024, a trial court now also has jurisdiction to recall a sentence and resentence a defendant on its own motion "at any time if the applicable sentencing laws at the time of original sentencing are subsequently changed by new statutory authority or case law." (§ 1172.1, subd. (a)(1); Assem. Bill No. 600 (2023–2024 Reg. Sess.) (Assembly Bill 600).) However, "[a] defendant is not entitled to file a petition seeking relief from the court under [section 1172.1]. If a defendant requests consideration for relief under this section, the court is not required to respond." (§ 1172.1, subd. (c).) Nonetheless, "nothing stops a defendant from requesting that the court initiate

20

a section 1172.1 proceeding on its own motion." (*People v. Faustinos* (2025) 109 Cal.App.5th 687, 696.)

In recalling and resentencing under section 1172.1, the court must resentence the defendant "in the same manner as if they had not previously been sentenced." (§ 1172.1, subd. (a)(1).) The trial court must "consider postconviction factors" and "apply the sentencing rules of the Judicial Council and apply any changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." (*Id.*, subd. (a)(2), (5).) In addition, the court is required to "state on the record the reasons for its decision to grant or deny recall and resentencing." (§ 1172.1, subd. (a)(7).)

Because a court's decision to recall and resentence on its own motion pursuant to section 1172.1, subdivision (a) is discretionary, we review a court's ultimate decision to recall and resentence for an abuse of discretion. (See *People v. E.M.* (2022) 85 Cal.App.5th 1075, 1082; see also *People v. Carmony* (2004) 33 Cal.4th 367, 375 [concluding abuse of discretion standard applies to court's decision to strike a prior as well as decision to not to strike a prior].)

### b. *Assembly Bill 333*

In 2021, the Legislature passed Assembly Bill 333, enacting the STEP Forward Act of 2021. (Stats. 2021, ch. 699, § 1.) "Assembly Bill 333 made the following changes to the law on gang enhancements: First, it narrowed the definition of a 'criminal street gang' to require that any gang be an 'ongoing, *organized* association or group of three or more persons.' (§ 186.22, subd. (f), italics added.) Second, whereas section 186.22, former subdivision (f) required only that a gang's members 'individually *or* collectively engage in' a pattern of criminal activity in order to constitute a 'criminal street gang,' Assembly Bill 333 requires that any such pattern have been '*collectively* engage[d] in' by members of the gang. (§ 186.22, subd. (f), italics added.) Third, Assembly Bill 333 also narrowed the definition of a 'pattern of criminal

21

activity' by requiring that (1) the last offense used to show a pattern of criminal gang activity occurred within three years of the date that the currently charged offense is alleged to have been committed; (2) the offenses were committed by two or more gang 'members,' as opposed to just 'persons'; (3) the offenses commonly benefitted a criminal street gang; and (4) the offenses establishing a pattern of gang activity must be ones other than the currently charged offense. (§ 186.22, subd. (e)(1), (2).) Fourth, Assembly Bill 333 narrowed what it means for an offense to have commonly benefitted a street gang, requiring that any 'common benefit' be 'more than reputational.' (§ 186.22, subd. (g).)" (*People v. Tran* (2022) 13 Cal.5th 1169, 1206 (*Tran*).) The substantive changes set forth in Assembly Bill 333 apply retroactively to all nonfinal cases as defined in *In re Estrada* (1965) 63 Cal.2d 740, 745. (*Tran, supra,* at p. 1207.)

### 2. *The Merits of Lopez's Claims on Appeal Cannot Be Reached*

We note that Lopez's notice of appeal only lists the denial of his section 1172.6 resentencing petition and makes no reference to the section 1172.1 resentencing order. Although appellate courts generally construe a notice of appeal liberally in favor of its sufficiency, "there are limits." (*In re J.F.* (2019) 39 Cal.App.5th 70, 76 (*J.F.*); see also Cal. Rules of Court, rules 8.100(a)(2) & 8.405(a)(3) [generally requiring appellate courts to construe liberally a party's notice of appeal].) "[W]hen a notice of appeal manifests a ' "clear and unmistakable" ' intent to appeal only from one order, we cannot liberally construe the notice to apply to a different, omitted order." (*J.F., supra,* at p. 76.) Here, the notice of appeal indicates it is only from the denial of the section 1172.6 petition—it does not state it is from all orders made at the August 14, 2024 hearing, or mention the section 1172.1 order in any manner.[7] We therefore conclude that Lopez's appeal of the section 1172.1 order is not properly before us and do not reach the merits.

---

[7] Further, the record reflects that when the parties indicated they had stipulated to a reduced sentence pursuant to section 1172.1, Lopez's counsel stated as follows: "we would be submitting on our invitation to recall his—I believe [he] has been doing quite

### III.    DISPOSITION

The order denying Lopez's section 1172.6 resentencing petition is reversed.  On remand, the trial court shall issue an order to show cause and conduct a new evidentiary hearing to determine whether the People can prove beyond a reasonable doubt Lopez is guilty of second degree murder under current law.

---

well, and has been rehabilitating.  [¶]  We would also be waiving our ability to appeal the 1172.1 decision and allowing your Honor's decision as to that to be final."  The People similarly indicated that the stipulated new sentence was "[i]n interest of finality and hopefully not having to litigate this once more."  We note that the record does not reflect that Lopez himself acknowledged that he was waiving such a right to appeal.

_____

                                    Wilson, J.


WE CONCUR:



_____

          Grover, Acting P. J.




_____

          Lie, J.




*People v. Lopez*
H052469

Trial Court:   Monterey County Superior Court

Trial Judge:   Hon. Carrie McIntyre Panetta

Counsel:      Marc J. Zilversmit, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General and Lindsay Thompson, Deputy Attorney General, for Plaintiff and Respondent.